RELATED DDJ

Jeff Macy "In Pro Per"
P.O. Box #103
Twin Peaks, Ca. 92391
Telephone: (909) 744 -8480
Email: 1611Bible.us@gmail.com
PLAINTIFF IN PRO PER

**FILED**

CLERK, U.S. DISTRICT COURT

10/23/2025

CENTRAL DISTRICT OF CALIFORNIA

BY ____AP____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Jeff Macy,

               Plaintiff,

vs.

California Air Resources Board,

               Defendant.

Case No.: 5:25-cv-02818-RGK(BFM)

**COMPLAINT & Demand for Jury Trial**

Plaintiff Jeff Macy alleges as follows:

### JURISDICTION & VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3-4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §§ 1983 & 1985, the First, Fourth, Fifth & Fourteenth Amendments of the United States Constitution. This court has supplemental jurisdiction over state law claims pursuant to 28 USC § 1367 because those claims are so related to PLAINTIFF'S federal claims that the claims form part of the same case &/or controversy pursuant to Article III of the United States Constitution.

2. Venue is properly founded in this judicial district pursuant to 28 USC §§ 1391(b) & (c) in that a substantial part of the events giving rise to the claims in this action occurred within this District & Defendants are subject to personal jurisdiction in this district.

### PARTIES

3.  Plaintiff Jeff Macy, is a citizen of the State of California, & at all relevant times herein was a resident in San Bernardino County in the State of California.

4.  Defendant California Air Resources Board is & at all times relevant a public entity located in the State of California & existing under the laws of the State of California.

**SUMMARY**

5.  Plaintiff has already complied with the Government Tort Claims Act under Government Code Sec. 900 & 910 *et seq.*, a plaintiff is required to timely file a written claim with a public entity, within a certain time period, before the plaintiff is able to file a suit. Plaintiff has filed multiple claims with Sophia Salas at the Department of Risk Management. Plaintiff has multiple claim #'s that can be provided. The County denied Plaintiff's claims, allowing Plaintiff to sue.

6.  This action involves, Municipal & Supervisory Liability (42. U.S.C. § 1983), Religious Discrimination, & intentional infliction of emotional distress on & for some time prior to 2021 (& continuing to present day).

7.  Defendants California Air Resources Board had either actual or constructive knowledge of the deficient policies, practices, & customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants condone, tolerated, & through actions & inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects & consequences of these policies with respect to the constitutional rights of Plaintiff Jeff Macy & other individuals similarly situated.

8. The conduct of the Defendants was despicable, malicious, wanton, oppressive & accomplished with a conscious disregard for Plaintiff Jeff Macy's rights. Defendants only goal against Plaintiff were for monetary gain.

9. There's an important legal principle that says "ignorance of the law is no excuse." You can't defend your actions by arguing you didn't know they were illegal, even if you honestly did not realize you were breaking the law.

<u>FIRST CAUSE OF ACTION</u>

**Extortion**

**(By Plaintiff Against California State Board of Equalization)**

10. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 9, inclusive.

11. Defendants California Air Resources Board is forcing Plaintiff to CARB test, going up to quarterly every year starting next year.

12. **2402. Hobbs Act -- Generally:** The Hobbs Act prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce "in any way or degree." Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to the conspiracy statute at 18 U.S.C. § 371. The statutory prohibition of "physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section" is confined to violence for the purpose of committing robbery or extortion. United States v. Franks, 511 F.2d 25, 31 (6th Cir. 1975) (rejecting the view that the statute proscribes all physical violence obstructing, delaying, or affecting commerce as contrasted with violence designed to culminate in robbery or extortion). The **extortion** offense

reaches both the obtaining of property "under color of official right" by public officials & the obtaining of property by private actors with the victim's "consent, induced by wrongful use of actual or threatened force, violence, or **fear**," including **fear of economic harm**. See this Manual at 2405 & Evans v. United States, 504 U.S. 255, 265, 112 S.Ct. 1181, 1188 (1992) (only a private individual's extortion of property by the wrongful use of force, violence, or fear requires that the victim's consent be induced by these means; extortion of property under color of official right does not require that a public official take steps to induce the extortionate payment).

13. **2403. Hobbs Act -- Extortion By Force, Violence, Or Fear:** A defendant need not create the fear of injury or harm which he exploits to induce the victim to give up property. See United States v. Duhon, 565 F.2d 345, 349 & 351 (5th Cir. 1978) (offer by employer to pay union official for labor peace held to be "simply planning for **inevitable demand for money**" by the union official under the circumstances); United States v. Gigante, 39 F.3d 42, 49 (2d Cir. 1994), vacated on other grounds & superseded in part on denial of reh'g, 94 F.3d 53 (2d Cir. 1996) (causing some businesses to refuse operations with the victim sufficiently induced the victim's consent to give up property, consisting of a right to contract freely with other businesses, as long as there were other businesses beyond defendants' control with whom the victim could do business). Moreover, attempted extortion may include an attempt to instill fear in a federal agent conducting a covert investigation or a defendant "made of unusually stern stuff." See United States v. Gambino, 566 F.2d 414, 419 (2d Cir. 1977) (argument that FBI agent pretending to be extortion victim could not be placed in fear is not

a defense to attempted extortion of the agent); see also United States v. Ward, 914 F.2d 1340, 1347 (9th Cir. 1990) (an attempt to instill fear included a **demand for money** from a victim who knew that the defendant was only pretending to be a federal undercover agent when he threatened the victim with prosecution unless **money was paid**).

14. According to the Electronic right to privacy: California Government Code section 11015.5. (b) – "A state agency shall not distribute or sell any electronically collected personal information about users to any third party without prior written permission from the user, except as required to investigate possible violations of Section 502 of the Penal Code or as authorized under the Information Practices Act of 1977 (Title 1.8 (commencing with Section 1798) of Part 4 of Division 3 of the Civil Code). Nothing in this subdivision shall be construed to prohibit a state agency from distributing electronically collected personal information to another state agency or to a public law enforcement organization in any case where the security of a network operated by a state agency & exposed directly to the internet has been, or is suspected of having been, breached." California Government Code section 11015.5. (d) For purposes of this section: (1) "Electronically collected personal information" means any information that is maintained by an agency that identifies or describes an individual user, including, but not limited to, the user's name, social security number, physical description, home address, home telephone number, education, financial matters, medical or employment history, password, electronic mail address, & information that reveals any network location or identity, but excludes any information manually submitted to a state agency by a user, whether electronically or in written

form, & information on or relating to individuals who are users serving in a business capacity, including, but not limited to, business owners, officers, or principals of that business. The Privacy Act of 1974, as amended, 5 U.S.C. § 552a: (b) CONDITIONS OF DISCLOSURE. —No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be. In conclusion, we Macy's never gave consent written or oral, nor ever would. Defendants never obtained information from the judge to get Plaintiff's mailing address. San Bernardino County allows anonymous complaints, yet San Bernardino County got Plaintiff's private information, private post office box, & mailed Plaintiff's multiple notices of violation before Plaintiff's even received a trial or hearing, Macy's were already considered guilty, even though Plaintiff's are supposed to be considered innocent until proven guilty. The government is accessing documents that the public & no one has rights to without a court order or without a warrant. San Bernardino County Code Enforcement cannot put Plaintiff's address in a public record in regards to these cases without prior written consent. Code Enforcement has volunteered to collect people's private information. Code Enforcement cannot disclose private information without a written approval or any other third party. The California Electronic Communications Privacy Act (CalECPA), S.B. 178, requires state law enforcement to get a warrant before they can access electronic information about who we are, where we go, who we know, & what we do. California Consumer Privacy Rights Act (CPRA): Proposition 24,

approved Nov. 2020, effective January 1, 2023 - Expands the consumer data privacy laws. Permits consumers to: (1) prevent businesses from sharing personal information; (2) correct inaccurate personal information; & (3) limit businesses' use of "sensitive personal information"—including precise geolocation; race; ethnicity; religion; genetic data; private communications; sexual orientation; & specified health information. Establishes the California Privacy Protection Agency to additionally enforce & implement consumer privacy laws & impose fines. Changes criteria for which businesses must comply with laws. Prohibits businesses' retention of personal information for longer than reasonably necessary. Triples maximum penalties for violations concerning consumers under age 16. Authorizes civil penalties for theft of consumer login information, as specified. (Amended by 2021 A.B. 1490) A new law that bars any state law enforcement agency from getting its hands on any user data without first obtaining a warrant from a judge. This includes private user data stored online, emails, digital documents, text messages & location information. Defendant San Bernardino County Code Enforcement cannot put Plaintiff's address or any personal information in a public record in regards to these cases without prior written consent. Defendants are violating Plaintiffs right to electronic privacy, so that Defendants can extort more money from Plaintiff.

## SECOND CAUSE OF ACTION

### Municipal & Supervisory Liability (42. U.S.C. § 1983)

### (By Plaintiff Against California State Board of Equalization)

15. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 14, inclusive.

PAGE 7 OF 16

16. On & for some time prior to **2021** (and continuing to the present date) Defendants California Air Resources Board deprived Plaintiff Jeff Macy of the rights & liberties secured to them by the 4th & 14th Amendments to the United States Constitution, in that said Defendants & their supervising & managerial employees, agents, & representatives acting with gross negligence & with reckless & deliberate indifference to the safety, rights, & liberties of the public in general & of Plaintiff Jeff Macy, & of persons in their class, situation & comparable position, in particular, knowingly maintained, enforced & applied an official recognized custom, policy, & practice of:

   (a) Employing & retaining as county officials & other personnel, including California Air Resources Board at all times material herein knew or reasonably should have known had propensities for abusing their authority & for mistreating citizens by failing to follow their State Policies;

   (b) Inadequately supervising, training, controlling, assigning & disciplining California Air Resources Board & other personnel, each knew or in the exercise of reasonable care should have known the aforementioned propensities & character traits;

   (c) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, controlling & disciplining the intentional conduct by California Air Resources Board & other personnel.

   (d) Failing to adequately train Defendants California Air Resources Board & failing to institute appropriate policies regarding constitutional procedures & practices;

(e) Having & maintaining an unconstitutional policy, customs, procedures of using excessive trespassing which is also demonstrated by inadequate training regarding these subjects.

17. Defendants California Air Resources Board had either actual or constructive knowledge of the deficient policies, practices, & customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants condone, tolerated, & through actions & inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects & consequences of these policies with respect to the constitutional rights of Plaintiff Jeff Macy & other individuals similarly situated.

18. By perpetrating, sanctioning, tolerating & ratifying the outrageous conduct & wrongful acts, Defendants California Air Resources Board acted with intentional, reckless, & callous disregard for the safety & constitutional rights of Plaintiff Jeff Macy. Defendants California Air Resources Board actions were willful, wanton, oppressive, malicious, fraudulent, extremely offensive, & unconscionable to any reasonable person of normal sensibilities.

19. By reason of the aforementioned policies & practices of Defendants California Air Resources Board acted with intentional, reckless & callous disregard for the safety & constitutional rights of Plaintiff Jeff Macy. Defendants California Air Resources Board caused Plaintiff Jeff Macy incurred damages in the form of psychological & emotional injuries, including, without limitation, pain & suffering, sleep deprivation, humiliation, all of which are continuing & damaging to reputation. Plaintiff's actual damages will be ascertained at trial.

20. The policies, practices, & customs implemented & maintained & still tolerated by Defendants California Air Resources Board acted with intentional, reckless & callous disregard for the safety & constitutional rights of Jeff Macy. Defendants California Air Resources Board were affirmatively linked to & were significantly influential forces of Plaintiff Jeff Macy.

### THIRD CAUSE OF ACTION

**Restricting the Use of Vehicle**

21. **(By Plaintiff Against San Bernardino County Land Use Services Department)** Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 20, inclusive.

22. Defendants California Air Resources Board is **restricting the use** of Plaintiff's property Plaintiff's vehicle. A Regulatory taking, which occurs when the government restricts a person's use of their property to the point of it constituting a taking. CARB is restricting the use of Plaintiff's vehicle. The law says only trucks over 14,000 pounds. Plaintiff's vehicle is registered in the dmv for 10,000 pounds.

23. If personal property is taken by the government in the exercise of its eminent domain power, it must compensate the owner." (City of Needles v. Griswold (1992) 6 Cal.App.4th 1881, 1891 [8 Cal.Rptr.2d 753].

24. **REGULATORY TAKINGS**: The government also takes property rights by imposing restrictions on the use of property. Suppose, for example, the government wants to preserve a forest or a wetland in its natural condition, either for recreational use or for a wildlife refuge. If the government were to condemn the land outright, there would be no question about its obligation to compensate the landowner. Yet, suppose

further that the government decides to leave legal title to the land with its private owner & passes a regulation prohibiting the owner from developing the land, or from farming it, or from doing anything else that changes the land's natural state. In this case the government would be compelling the private landowner to devote the land to whatever use the government desires. In effect, the government here takes away from the owner the right to use the land. The private owner of the land would be owner in name only; the effective owner would be the, government, although in almost all instances the private owner would still be liable for the payment of property taxes on the land. This would be an attempt to circumvent the Fifth Amendment & to achieve the same ends as would out- right condemnation, but without paying compensation. Common Law Rights. Not all regulations, of course, infringe on private property rights. Under the common law of property & tort, a landowner's property rights are defined & limited by the property rights of his neighbors. If a regulation merely prevents someone from engaging in activities that would violate the rights of others under the common law of nuisance or trespass, 4 such as polluting a river that runs through a neighbor's land, then the landowner has no right to compensation, even though the value of the landowner's land may be diminished as a result of the prohibition. This is because the landowner has no right to engage 3 United States v. Causby, 328 U.S. 256, 267 (1946). common law kept clear the important distinction between inflicting a harm & withdrawing or denying a benefit. In general, only physical invasions counted as injuries & could give rise to a cause of action. See Richard A. Epstein, Takings: Private Property & the Power of Eminent Domain (Cambridge. Mass.: Harvard University Press,

1985), pp. 107-125. in such activities to begin with. Regulations in such cases actually would protect private property rights. The Easement Option. By contrast, if a particular activity would not violate the property rights of others as defined under the common law of trespass or nuisance & would not give others any legal ground to sue, then a landowner has the right to engage in the activity on his or her own land. If a neighbor wants to prevent the landowner from engaging in some activity that does not violate the neighbor's property rights, the neighbor must pay the landowner to abstain from the activity; & if the neighbor wants to stop the activity permanently, he or she must purchase an easement from the landowner. This means that any regulation that prevents people from engaging in activities on their land that do not violate the property rights of others abridges the property rights of the landowners whose activities are restricted. Specifically, such a regulation takes away some of the landowners' rights in the use & enjoyment of their land, in effect taking an easement that should have been theirs to sell. Even if many other desirable uses are still permitted to the landowners, the regulation is a partial taking. As such, the landowners deserve to be compensated for whatever property rights they have lost. **COMPUTING COMPENSATION**: Whenever a regulation takes away private property rights, the proper measure of compensation is the difference between the value of the property with & without the regulation; this difference is the value of the easement the government has taken. Of course, if the property is worth just as much with the regulation as it is without it, then no loss in value has been caused, & no compensation is owed. Similarly, some government actions may reduce the value of land without taking away property rights,

& hence do not give rise to an obligation to compensate. Example: A decision to close an exit along a particular highway, or to build a new highway someplace else, may diminish the value of hotels & restaurants along the original highway. If the landowners' property rights in the use of their land have been left fully intact, however, then they are not entitled to compensation out of taxpayer funds. The mere fact that a regulation amounts to a taking does not mean that the government cannot go forward with the planned regulation. It simply means that the government must pay compensation in order to do so. The only issue properly involved in regulatory takings cases under the Fifth Amendment is the right to compensation, not the validity of the regulations. 5 See, eg., Office of Legal Policy, U.S. Department of Justice, Economic Liberties Protected by the Constitution, March 16, 1988, pp. 7-11, 32.6 An easement is a right over the property of another. An affirmative easement is a right of use, such as a right of way allowing one to pass over the land of another to access a road or a beach, or a right to discharge water onto neighboring land. A negative easement is a restriction on the use of land by its owner, prohibiting him from doing something which would otherwise be lawful. A negative easement may also be called a "restrictive covenant" or a "negative servitude." Black's Law Dictionary, Fifth Edition (St. Paul, Minn.-West Publishing Company, 1979). pp. 457-58, 1182, 1229.

25. **PAYING FOR REGULATORY TAKINGS**: The increased ability of property owners to secure just compensation when their property rights are taken by regulations means that the government, & hence the taxpayers, can expect to pay more in coming years for actions that restrict property rights. As a consequence of the court rulings of the past five years, & of

the explosive growth in regulation over the past twenty years, the number of takings claims filed against the government, the frequency with which property owners seeking just compensation win, & the average dollar amount awarded to successful claimants all have increased. Consider the following: Over **52** cases alleging the taking of property & seeking compensation were filed with the Claims Court last year, the most in at least a decade, & possibly the most ever. Nearly **200** takings cases are pending in the Claims Court. [The total compensation that the U.S. would have to pay if those seeking now on appeal before the U.S. Court of Appeals for the Federal Circuit.] See Florida Rock Industries, **21** Cl. CL at **16** 6-**68**. The only damage that is done when a wetland is filled with chemically harmless material is to the landowner's own property, the wetland; there is no physical invasion of anyone else's land or water such as would give rise to a common-law nuisance action. See Epstein, op. cit., p. **123**. **25** Whitney Benefits, Inc. v. United States, **18** Cl. Ct.  **394** (**1989**), modified, **20** Cl. Ct. **324** (**1990**), afd, **926** F. **2**d **1169** (Fed. Cir.), cert. denied, **112** S. Ct. **406** (**1991**). eg., Moore, "Showdown on Property Rights," National Journal, November **30**, **1991**. p. **2940**; "Environment Laws Face a Stiff Test from Landowners," The New York Times, January **20**, **1992**, p. A**1**. **27** Ibid. **28** Ibid. redress were to win & receive the full amount that they are seeking is well over $**1** billion. Although the United States surely will win & thereby avoid paying compensation in many of these cases, the frequency with which property owners seeking just compensation win has risen sharply in recent years. Property owners won more than half of all regulatory taking cases decided by the federal courts in **1990**, the most recent year for which figures are available. In contrast, the federal government wins nine

out of ten times in other areas of the law. The growth in federal regulation in the past three years, & the trend in the courts toward protecting private property owners, means that the government can expect to pay more in the future to compensate for regulatory takings.

**WHEREFORE,** Plaintiff's pray judgment against Defendants as follows:

1. For compensatory damages of **$250,000**;

2. For interest on those claims where it is available under law;

3. For cost of suit;

4. For such other & further relief as this Court may deem to be just & proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


Respectfully Submitted,


By Plaintiff:  _Jeff Macy_

Jeff Macy


Dated:  _____10/23/25_____